IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MATTHEW JAMES
WILLINGHAM,

    Plaintiff,

v.                                  CASE NO. 3:11-cv-542-MW/CJK

CITY OF VALPARAISO
FLORIDA, etc.,

    Defendant.
_____/

**ORDER GRANTING IN PART, DENYING IN PART,
AND TAKING UNDER ADVISEMENT IN PART, DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

This is a civil rights action brought by Plaintiff, Matthew James Willingham ("Plaintiff"), against his former employer, the City of Valparaiso, Florida ("the City"), pursuant to 42 U.S.C. § 1983, together with a state claim for declaratory relief. The City moved for summary judgment. ECF No. 80. This Court conducted a hearing on Friday, January 31, 2014. As announced at the conclusion of the hearing, the motion is due to be granted in part and denied in part as to the federal civil rights claim and the balance of the motion related to the state claim for declaratory relief is taken under advisement.

1

## Summary of Facts[1]

In 2006, Plaintiff was hired by the City's police department. His job responsibilities included certain code enforcement duties. At the time of his hire, Plaintiff also owned and operated a seafood business.

The City Attorney, Douglas Wyckoff, frequented Plaintiff's business. The two were friends. Ultimately, the relationship deteriorated. Plaintiff was friends with City Commissioner Brent Smith who disagreed with City Attorney Wyckoff and Mayor John Arnold regarding the basing of the F35 at a neighboring Air Force base. This became a source of even more friction when Commissioner Smith announced that he intended to run for mayor. Finally, and apparently the straw that broke the proverbial camel's back, Plaintiff told City Attorney Wyckoff that he was no longer welcome at his business alleging that City Attorney Wyckoff had a drinking problem.

A few weeks after the confrontation between Plaintiff and City Attorney Wyckoff, on October 4, 2009, Plaintiff met with Chief of Police Joe Hart and City Administrator Carl Scott to discuss a list of building code violations. Plaintiff expressed reservations regarding both the use of police to inspect property for

---

[1] This Court provides a brief summary of the facts for the sole purpose of putting this Court's summary of its ruling in context. This Court conducted an exhaustive hearing. The record is voluminous and the pertinent facts far more involved than this brief summary.

building code violations and the sudden enforcement of previously unenforced code provisions against existing businesses. The three agreed to take the issue to the City Commission at its upcoming meeting.

The next day, October 5, 2009, City Administrator Scott gave Plaintiff a letter citing his seafood business for multiple code violations. Suddenly, Plaintiff's role changed. Now, Plaintiff counted himself among the businesses he felt were subject to the sudden and unfair application of previously unenforced code provisions. By letter dated October 7, 2009, Plaintiff, as owner of a seafood business, notified Chief Hart that he was concerned regarding the treatment of his business and noted City Administrator Scott should be provided with clear direction on how to pursue other existing businesses.

On October 12, 2009, Plaintiff appeared before the City Commission. Unlike other city officials and/or employees, Plaintiff was not identified as "Captain Willingham." Moreover, he was not asked to speak as a member of the police department or regarding his code enforcement duties. Instead, Plaintiff was identified as "Mr. Matt Willingham" and his home address was identified for the record. This is entirely consistent with his changing role when he notified Chief Hart by letter dated October 7, 2009, that he was contacting him as a concerned business owner. Likewise, just as he had raised enforcement issues regarding both his own business and businesses in general in his letter to Chief Hart, Plaintiff

summarized the issue with his own business but then stated he had a concern about City Administrator Scott "going after all the businesses" and he was further concerned that the City was not giving businesses "a time line for compliance." Stated otherwise, Plaintiff objected to enforcement actions against his own business and the other businesses within the City.

By letter dated October 14, 2009, Mayor Arnold informed Plaintiff that he was "considering" his termination, and by letter dated October 28, 2009, Mayor Arnold terminated Plaintiff stating that Plaintiff's code violations constituted "illegal conduct" and that Plaintiff's conduct was "even more shocking and abhorrent given [his] employment as a Captain in the Valparaiso Police Department in charge of Code Enforcement."[2] Mayor Arnold concluded by telling Plaintiff that he had the right to appeal his termination. Plaintiff appealed.[3]

The City Commission met again on November 9, 2009. Plaintiff sought to have the City Commission vote to rescind his termination. Commissioner Smith moved to reinstate Plaintiff. Mayor Arnold, who had invoked his rights under the City Charter to terminate Plaintiff, announced that he did not think it "appropriate." For his part, City Attorney Wyckoff advised the Commission that it

---

[2] Mayor Arnold says the letter was drafted by City Attorney Wyckoff.

[3] As explained on the record, Plaintiff arguably had no right to appeal via the grievance process but was limited to seeking review by the City Commission inasmuch as he was terminated by Mayor Arnold pursuant to his powers under the City Charter.

should not discuss the termination since Plaintiff had "opted to sue and appeal." When Plaintiff's counsel agreed to withdraw the appeal so the City Commission could consider the matter, City Attorney Wyckoff stated that the appeal was withdrawn and thus there is "nothing to undo." Thereafter, Mayor Arnold announced that the City Commission would "move on to the next item."

### First Amendment Claim

Plaintiff claims he was terminated for protected speech in derogation of the First Amendment.

Plaintiff spoke to Chief Hart and City Administrator Scott on October 4, 2009, in his capacity as a "Captain" and an officer with code enforcement responsibilities. That is, this Court finds that Plaintiff spoke as an employee and not as a citizen and thus such speech is not protected. Accordingly, to the extent Plaintiff bottoms his First Amendment claim on the October 4th meeting, summary judgment is granted.

Plaintiff's friendship with Commissioner Smith is not an intimate association within the meaning of the law. Moreover, while there is evidence that Commissioner Smith engaged in expressive conduct, there is no evidence on this record, none, to suggest that Plaintiff engaged in expressive conduct related to the mayoral election or the basing of the F35 at a neighboring Air Force base. It is no answer that Commissioner Smith engaged in expressive conduct and Plaintiff is

5

associated with Commissioner Smith.  As noted, Plaintiff's "friendship" with Commissioner Smith is not "intimate" so as to support a First Amendment claim.[4]  Accordingly, to the extent Plaintiff bottoms his First Amendment claim on political association, summary judgment is granted.

Similarly, the theory that City Attorney Wyckoff orchestrated Plaintiff's termination in retaliation for Plaintiff barring him from his business will not support a First Amendment claim.  While there are multiple problems with such a theory, there is no evidence in this record, none, that Plaintiff exercised protected speech regarding City Attorney Wyckoff and his banishment.  All we know is that Plaintiff told him not to come back and his motivation for doing so.  Accordingly, to the extent Plaintiff bottoms his First Amendment claim on his barring City Attorney Wyckoff from his business, summary judgment is granted.

However, this Court finds that Plaintiff's statements at the October 12th meeting constitute protected speech.  This Court finds that Plaintiff spoke as a citizen regarding a matter of public concern.  Moreover, this Court finds that Plaintiff's First Amendment interests outweigh the City's interests in promoting the efficiency of the public services it performs through its employees under the *Pickering* test.

---

[4] It is possible that Plaintiff engaged in expressive conduct.  However, as noted at the hearing, this Court is limited to the record before it.

This Court also finds that the record would permit, but does not compel, the conclusion that Mayor Arnold terminated Plaintiff because he spoke on a matter of public concern. Moreover, the record would permit, but does not compel, the conclusion that Mayor Arnold would not have terminated absent his protected speech.

It is no answer that Mayor Arnold did not have final policymaking authority. Under these unique facts, Plaintiff did not have an actual opportunity for meaningful administrative review.

Accordingly, Defendant's motion is denied as it relates to Plaintiff's First Amendment claim based on Plaintiff's statements at the October 12th meeting.

## State Claim

As announced on the record, this Court takes Plaintiff's state claim for declaratory relief under advisement.

For the reasons stated on the record at the conclusion of the hearing on Friday, January 31, 2014, as summarized above,

IT IS ORDERED:

Defendant's Motion for Summary Judgment, ECF No. 80, is **GRANTED IN PART,** as it relates to certain speech which this Court finds is not protected speech, and **DENIED IN PART**. Plaintiff's First Amendment claim, Count I,

survives summary judgment and Plaintiff's claim for declaratory relief, Count II, is **TAKEN UNDER ADVISEMENT**.

**SO ORDERED on February 3, 2014.**

<u>s/Mark E. Walker</u>
**United States District Judge**